**Loyd Randall McCLOUD,
Plaintiff,**

v.

**Sheriff Millard TESTER et al.,
Defendants.**

**No. CIV-2-74-1.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

Jan. 2, 1975.

Alfred W. Taylor, Milligan College, Tenn., for plaintiff.

Max E. Wilson, Mountain City, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

The plaintiff Mr. McCloud claims the defendants subjected him, or caused him to be subjected, to the deprivation of his right to be secure in his home against an unreasonable search, Constitution, Fourth Amendment, and to the deprivation of his right not to be deprived of his liberty without due process of law, Constitution, Fourteenth Amendment. 42 U.S.C. § 1983. This Court has juris-diction of the subject matter hereof under 28 U.S.C. § 1343(3).

It is stipulated that at all pertinent times Mr. McCloud was a citizen of the United States; that the defendant Mr. Millard Tester was the sheriff of Johnson County, Tennessee; that the defendant Mr. Roger Gentry was an officer of the Town of Mountain City, Tennessee; and that each defendant was acting under color of Tennessee law. Trial was to the Court without a jury on October 25, 1974.

The facts are not in great dispute, except as to one particular, viz., Mr. McCloud claims that the aforementioned deprivations occurred on February 21, 1973, when the defendants were acting without the authority of a search warrant or an arrest warrant, respectively; whereas, the defendants Messrs. Tester and Gentry claim that the acts complained of occurred on February 23, 1973, when they were acting with the authority of arrest warrants. The plaintiff Mr. McCloud testified that the acts mentioned took place on some Saturday in February, 1973, and his wife Mrs. Janice Therese McCloud testified that the search mentioned took place on the early morning of Saturday, February 24, 1973. The Court notices judicially that February 21, 1973 was Wednesday and finds that the acts complained of occurred on Saturday, February 24, 1973.

On February 23, 1973 Honorable W. D. Hill, who is the chairman of the County Court of Johnson County, Tennessee and performs therein the magisterial duties of a judge of a court of general sessions of Tennessee, issued warrants of the state of Tennessee for the arrest of Mr. McCloud and "John Doe, alias", on charges of selling on February 21, 1973 illegal drugs. These warrants were issued by Judge Hill on the basis of respective affidavits thereto of the defendant Mr. Tester and commanded any lawful officer of Johnson County, Tennessee, in the name of the state of Tennessee, to arrest each respective defendant and bring him before

Judge Hill or some other justice of the peace of such county to answer such charge. The warrants were delivered to the possession of Mr. Tester for execution.

"John Doe, alias" was known to the officers only as "Hash" or "Mr. Hash". He was never apprehended, and the aforementioned warrant for his arrest remains outstanding.

Armed with both the aforementioned warrants on February 24, 1973, the defendant Mr. Tester enlisted the assistance of his deputies Messrs. Dale Campbell and John R. Dickens, the defendant Mr. Gentry, and another officer and went to the mobile home of Mr. and Mrs. McCloud in Mountain City, Tennessee at about 1:00 o'clock, a.m. Mr. Gentry remained in front of the home, and Mr. Campbell went to the rear thereof. Mr. Tester noticed upon his arrival there that the McCloud motor vehicle was absent from the premises. He knocked on the door of the mobile home, announced that he was the sheriff of the county and was there to serve a warrant of the state of Tennessee. When there was no immediate response from within the trailer, he stated that he would break-down its door if it wasn't opened.

Mrs. McCloud came to the door, rolled-down the window thereof, and was advised by Mr. Tester that he had a warrant for the arrest of a person, whom he had information was then present in the McCloud residence. Mrs. McCloud admitted Mr. Tester and two other officers. The officers searched progressively the mobile home of the McClouds, and Mrs. McCloud turned on the lights for them. They looked under the bed, in a closet, and behind a piece of paneling behind a water heater, which they removed. Finding no one present therein except Mrs. McCloud, the officers left the premises taking nothing with them therefrom.

A short while afterward, having heard a noise in the home, Mr. Tester again knocked on its door. Mrs. McCloud responded in the same manner as before and was asked by Mr. Tester if there was a closet in the bedroom of the home. Mrs. McCloud affirmed this fact. Mr. Tester asked that the officers be permitted to look therein, and Mrs. McCloud again admitted the officers. They searched the closet without success in their mission and again left the premises, taking nothing therefrom. On this visit, Mrs. McCloud inquired the name of the person for whom the officers were searching and was told he was known to the officer only as "Hash". Sheriff Tester stated also that he had a warrant for Mr. McCloud, and Mrs. McCloud stated that her husband was at work and not at home.

When the officers retired the second time, Mrs. McCloud called her husband by telephone at his place of employment and advised him of the officers' searches. Mrs. McCloud was pregnant at the time and became hysterical. Mr. McCloud left his place of employment, returned home briefly, and then left to see Mr. Tester to ascertain the reason for the intrusion.

As Mr. McCloud was driving toward the jail in Mountain City, his vehicle was stopped and blocked by the vehicle of Mr. Campbell. Mr. Gentry was parked nearby and went to the scene of the arrest. Mr. Campbell advised Mr. McCloud that Sheriff Tester wanted to see him (Mr. McCloud) and would be on the scene momentarily. Mr. Campbell established radio contact with Mr. Tester who came to the scene of the arrest within five minutes and read the warrant of arrest to Mr. McCloud. Mr. Tester began advising Mr. McCloud of his constitutional rights and was told by Mr. McCloud that he understood his rights. Mr. Tester then formally took Mr. McCloud into physical custody and transported him to the Johnson County, Tennessee jail, where Mr. McCloud was incarcerated from about 2:30 o'clock, a. m., until he was released on bail bond at about 3:30 or 4:00 o'clock, a.m.

Mr. Tester had obtained a substance from the home of Mr. and Mrs. Clifford Hall on February 23, 1973 and transmit-

ted it to a laboratory for analysis. Judge Hill assigned the matter against Mr. McCloud for preliminary examination on March 17, 1973. No hearing was held on that date. Rather, Lewis W. May, Jr., Esq., the district attorney general of the first judicial circuit of Tennessee, and Mr. McCloud's counsel in that matter, Walter A. Curtis, Esq., conducted a "discovery" proceeding, in which Mr. Curtis was permitted to interrogate the proposed witnesses for the state of Tennessee in the matter. An agreement was evolved between such counsel that, if the laboratory analysis of the aforementioned substance indicated that it was a scheduled legend drug, Mr. McCloud would waive preliminary examination and be held to the action of a grand jury; but, if such analysis indicated otherwise, all charges against Mr. McCloud would be dismissed. While a grand jury was in session at some future time in such county, it was learned by the prosecuting attorneys that the analysis indicated that the aforementioned substance was not a drug. No further proceedings were taken against Mr. McCloud.

The Court finds that neither Mr. Tester nor Mr. Gentry deprived Mr. McCloud of any right secured to him by the federal Constitution. The Court finds specifically that a warrant for the arrest of Messrs. McCloud and "Doe, alias", valid in form and issued by a court of competent jurisdiction, had been placed in Mr. Tester's hands for execution, see 5 Am.Jur. (2d) 669, Arrests, § 4, and that Mr. Tester had enlisted the assistance of Mr. Gentry in executing the same. It would have been a misdemeanor for Mr. Gentry to have refused or wilfully neglected to assist Mr. Tester in the execution of the latter's office in a criminal case. T.C.A. § 39–3105. Such warrants, being regular on their faces, Mr. Tester was bound to serve them; and it would have been a misdemeanor for him to have wilfully refused to execute the warrants in his possession. T.C.A. § 39–3216. In undertaking to execute the warrants, the defendants Messrs. Tester and Gentry were constitutionally authorized to enter any place they had reason to believe one or both of the persons named in the warrants might be found, and, if necessary, to break any outer or inner door of any building, if, after notice of their offices, authority, and purpose, they had been refused admittance. T.C.A. § 40–807; Smith v. Tate (1920), 143 Tenn. 268, 227 S.W. 1026. The defendants, having arrested Mr. McCloud under the aforementioned warrant, are not liable for false arrest and imprisonment " * * * simply because the innocence of the suspect [Mr. McCloud] [was] later proved. * * * " Pierson v. Ray (1967), 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 295[7].

It is the resultant decision of this Court that the plaintiff Mr. Loyd Randall McCloud hereby is denied all relief herein against the defendants Messrs. Millard Tester and Roger Gentry. Judgment to that effect will enter. Rule 58(1), Federal Rules of Civil Procedure.